Chief Justice Bibb
delivered the Opinion of the Court.
The complainants, the heirs at law of James Robertson, claim the lands in question, lying within the State of Indiana, and county of Clarke, within the grant by the State of Virginia to the Illinois Regiment, for their services in gubduf *524 ihg the British posts of Kaskaskias and "Vincennes, during the revolutionary war; the defendants claim under the last will apd testament of said James Robertson, deceased, made at Natchez, and bearing date on the 19th December, 1780, devising his whole estate, real and personal, to Phil. Barbour.
Question stated.
After acquired lands were not devisa-ble in 1780 — . the power was given by statute, Jan. 1st, 1787— 3 Moil. 336.
Extract from the resolution of Virginia, for ceding the N. W. territory to tlie.TJ. States, but reserving a tract of laud for Clarke’s regiment.
That said James Robertson was a lieutenant in the regiment, both parties admit; the complainants claim the lots laid off for the portion of said James Robertson, by descent;, the defendants claim under the devise.
The first question is, whether the said James Robertson had a devisable interest at the date of the said testament.
In the year 1780, a testator had not the, authority of law to devise after acquired lands. There is no proof of a republication after the 19th December, 1780, so that the question stands upon the interest which the said James Robertson then had in the bounty lands, conceded by the State of Virginia, to tire officers and soldiers of the Illinois regiment.
The complainants, in deducing their claim, exhibit the resolution of the General Assembly of the Commonwealth of Virginia, of the 2nd January, 1781, for ceding to the Congress of the United States, upon the terms thereiu expressed, the lands lying north west of the Ohio river, then the property of the State of Virginia. One of the terms of cession contains a reservation of the tract of land for the Illinois regiment, afterwards located and apportioned according to the terms of the reservation. The part of the resolution material to the present question, is in these words: “As Col. George Rogers Clarke planned and executed the secret expedition, by which the British posts were reduced, (viz: of Kaskaskias and Vincennes, before mentioned in said resolution,) and was promised* if the enterprize succeeded, a liberal gratuity in lands in that country-, for the officers and soldiers who first marched thither with him; that a quantity of land not exceeding one hundred and fifty thousand acres, be allowed and granted to the said offi *525 cers and soldiers, and the other officers and soldiers that have been since incorporated into the said regiment, to be laid off in one tract, the length of which not to exceed double the breadth, in such place on the northwest side of the Ohio, as a majority of the officers shall choose, and to be afterwards divided among the said officers and soldiers in due proportions, according to the laws of Virginia.”
Interest of Ijt. ■Robertson in the Illinois grant v as devisa-ble by his will, dated after the regiment had reduced the British posts, the service for which the land had been previously promised, and was afterwards a-ranted.
This resolution is posterior to the date of the will and testament; both parties claim under the resolution, both parties are bound by its recitals. We must then take it as established, that before the regiment marched on this secret expedition, which terminated so gloriously and successfully, the State of Virginia had promised the bounty as mentioned in the resolution, and the lands in controversy are the proceeds and share of lieutenant Robertson’s interest in that promise. That said Robertson “shared in the glorious achievements of that regiment, when the British posts of Vincennes and Kaskaskias surrendered to the brave, enterprizing and distinguished commander,” is admitted in the bill. The surrender of those posts preceded the date" of said Robertson’s will, and consequently, by the previous promise to the regiment, and the performance of the services, James Robertson had acquired an interest in the bounty lands so promised to the officers and soldiers, long before the date of his said will. He had thus acquired a descendible interest; and it is that very interest, which the complainants claim by inheritance; for Robertson died before any other act of the legislature of Virginia was done or passed. He died before the act of 1783, for surveying and apportioning the lands so reserved to the Illinois regiment, by the said resolution of 1781. It is clear, that by performance of the services, James Robertson, with the other officers and soldiers, had acquired a just claim upon the government for the bounty promised in lands. It is well settled, that any interest in lands, which is descendible to the heir, can be devised. A contingent executory estate or possibility, clothed and coupled with an in: terest, is devisable. The case of Gist’s heirs vs. Robinett &c. (3 Bibb, 2,) settled, that the will of *526 Thomas, Gist, published in 1772, when he was entitled to 2,000 acres of land under the royal proclamation of 1763, upon his personal application to of the governors of the colonies of North America, did dispose to the devisee the after acquired specific tract which was surveyed and granted in consideration of his services under the proclamation. The question in that case was debated and decided upon the authorities referred to, and the opinion of Lord Mahsfield, that “descendible and devisable are convertible,” is approved. The decisions quoted in that case, sustain ilie claim of the devisee unde" the will and testament of Robertson, so far as the power to devise the land in question is involved.
Proofs of the will.
Proofs of the execution of ¡naSpanish province, ac-cordingtotbe country, not couformable to the laws of notSsuflSo¡e.nt to pass lands then situate m Virginia.
The second question is as to the proof of the will and testament of Robertson.
The will was published at Natchez, in December, 1780, with the signatures of three attesting witnesses. In this case two classes of proofs of the publication and authority of the will are offered. First: The authentication according to the laws of Spain, prevailing at the place where the will was published and where the testator died. Secondly: The probate before the court of common pleas of the State of Indiana, for the county of Clarke, wherein the land lies, in a controversy between the devisee offering the will for probate and record, and the heirs who opposed it.
As to the first, the law is well settled, that a will of lands must be made and published with the so-]emnities required by the laws of the country where the land is situate. Although the will was made and published in Natchez, yet as the lands were in the then State of Virginia, a publication according to ^ie Nws ®Pa*ni will not avail, unless the so-lemnitics required by the laws of Virginia were observed. One nation cannot suffer the title to its rea^ property to be conveyed or disposed of by the laws of another country, contrary to its own laws., To prove the will made according to the laws of Spain> prevailing at Natchez, where the will was made, is doing little to make good the devise of *527 these lands, unless it be shewn that this lex loci, and the lex ret scite, as to wills and testaments were the same, or, to be more explicit, the proof ought to conform to the requisitions of the laws of Virginia. If the controversy liad arisen whilst the lands were a part of the territory of Virginia, no doubt could exist as to the propriety of requiring such proof. If the devise when made, was not good to pass the lands then in Virginia, but contrary to her laws, then, being void at first as to these lands, the will could never after be good and valid.
Wills to pass au(hentical-ed according to the laws of ^here the^ land lies.
proof 0r the ,will in Uli-nois, in the ^bracini^ the land.0
Objections io tlie Pr°of 0 ie W1 '
Probate ofa dato4 Natchez granted by the proper ciarke^ounty, Illinois, on the pre-sentatiPn of the devisee and contes-tation of the heirs, is eon-elusive, in any controversy in Kentucky, between the heirs and de-visee, concerning the lands in the county of ’CJarkc,
*527 The will, however, has been proved and admitted to record before the court of Indiana, where the land lies, having competent jurisdiction to try the validity of the will, and that too in a contestation between the heirs and the devisee, and there the will was adjudged to be good and valid. The State of Indiana has been admitted into the union in pursuance of the terms of cession of Virginia to the United States. So that the land was, at the time of the contestation of the will between heir and devi-see, within the territorial limits of Indiana; not longer under the sovereignty of Virginia, and not within the limits of Kent achy, where this suit is brought.
For the complainants it is argued that the evidence given on the trial in Indiana, as set down in the bill of exceptions, is not complete to show a publication according to the laws of Virginia prevailing over the territory at the lime of the will made; and that the adjudication should have been according to the laws of Virginia so prevailing at the time, and that there is no proof to this court to supply the defect of proof in Indiana.
There is not proof in this record of apublication according to the laws of Virginia, abstracted from the effect and faith due to the adjudication in the court of Indiana; nor is there any thing in the re-co.rd from Indiána, to show that the court did not proceed to try the will by the prevailing laws of Virginia at the time; nor to show that the court of Indians did not consult and determine according to that law. The record states certain documentary *528 evidence, by the certificate of Grand Pret, the commandant of the Spanish provinces, that the will was good and valid and entitled to faith in courts of justice and elsewhere; and of ffm. Chambers, together with the depositions of Stephen Minor and others, and other testimony. So that this court cannot see the whole evidence upon which the court of Indiana decided. The jurisdiction of that court to hear and determine the matter, is not questioned; there is no foundation laid from which this court can pretend to say, the proceedings upon tiie matter of the contestation and probate, of the will was coram non judice. Ought this court to refuse to give credit to the probate of the will so allowed in Indiana? Can this court revise and reverse the decision of a court of competent jurisdiction of a sister State? Common utility and comity, due from one court to another, have established a rule among' civilized nations, that a foreign decree or judgment shall be put in execution unless some good cause be opposed to it in law or in equity. It should be presumed just until the contrary be proved. There is nothing more hurtful to society than that law suits should be never ending and still beginning. In every law suit there ought to be a ne plus ultra, some step that ought to be ultimate. It would be very bard to subject a party to a suit and litigation of the-same matter, once adjudged between him and his adversary, in every country in which they may happen to meet. The general principle is, that the decision of a court of competent jurisdiction, upon a hearing of the parties, is final and binding upon, all other courts of concurrent power. From the necessity of putting an end to litigations which have been once heard and decided, and of preserving mutual respect, and confidence, and harmony between the tribunals concerned in the administration of justice, res judicata, is generally received as good plea of action or defence, in every country in which the one party or the other may pursue his adversary. If this court will not give faith and credence to this decision of the court of Indiana upon the validity of this will, shall the court of Indiana be expected to give faith and efficacy to the decree of *529 She court of this State upon the same matter, de» daring the will invalid'? Must this contestation be renewed as often as the parties may happen to meet in this or that State? All systems of jurisprudence forbid such action and reaction of courts, the one upon the other, when neither has appellate jurisdiction. This comity, and mutual respect and confidence between courts of justice is founded on the soundest policy. In furtherance qf this policy, the constitution of the United States and the act of the Congress of the United States in pursuance qf the constitution, have provided that the records and judicial proceedings of the courts of the several States within the United States, “shall have such faith and credit given to them in every court within the United States, as they have by law or usage in the courts of the State from whence the said records are or shall be íalien.” In a contest between the heirs of the testator and the devisee, this will has been adjudged good and ordered to record to perpetuate the evidence of its existence and validity, by the court of Indiana, in the circuit court of Clarke county', wherein the land lies. We cannot take this contest and adjudication to have béen about a mere probate of the will, as of a will relating to the personal goods and chattels of the testator onlyr; to have only such effect as a probate before an eccle? siastical court in England would have there. The record shews the contest to have been between the heirs and the devisee. We cannot doubt but that this will, so adjudicated and ordered to record, would be received in all the courts of Indiana as sufficient evidence in favor of the devisee, to protect his title and claim to the lands devised, so long as that adjudication remains un re versed by a court of competent appellate jurisdiction. Having such faith and credit in the courts of Indiana, the same faith is due to that judicial proceeding in-the courts of this State. Giving due faith and credit to that judicial proceeding, upon a hearing given to noth parties, we must presume that court to have core-suited the law of Virginia, and to have required that the evidence of publication should conform to the appropriate laws bearing on the question. We *530 cannot perceive any principle upon which we won!A be justified in denying faith and credit and full ef-feet to the adjudication in favor of the will, in the court of Indiana. The court of that State has carried into effect and execution, a will of lands lying within its own territorial jurisdiction. That adjudication cannot occasion any prejudice to rights of the State of Kentucky. It is not demanded by any consideration of policy or convenience, that a will so pronounced valid in Indiana, upon a hearing of the parties interested in the contestation, should he pronounced invalid for the same lands, and between the same parties and privies, because the heirs have thought proper to renew the contest in this State, by a proceeding in personam, to compel a conveyance of the lands lying in Indiana.
Richardson and Pope, for plaintiffs;. Denny, fpr defendants.
It seems to this court, that the said James Robertson, the testator, had, at the date of his will, a devisable interest in the lands promised by the State of Virginia to the officers and soldiers of the Illinois regiment; that the lands in question, passed by the said will to Phillip Barbour, the devisee therein named; that the record of the judicial proceeding in Indiana, between the devisee and the heirs, in which the said will was admitted to probate and record, Is sufficient evidence in favor of the devisee and those claiming under him, the defendants in this suit, and against the heirs of said testator who are the complainants.
It is, therefore, ordered and decreed, that the decree of the said circuit court of Jefferson, in dismissing the bill with costs, be affirmed.
Defendants in this court to have a decree for their costs.